United States District Court
Southern District of Texas
**ENTERED**
November 02, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

LILLIAN YIP,                                  §
        *Plaintiff*,                        §
                            §
v.                                            §    CIVIL ACTION NO. 4:19-CV-03588
                            §
THE EXXONMOBILE DISABILITY PLAN, §
        *Defendant*.                       §

<u>**ORDER**</u>

In this Employee Retirement Income Security Act (ERISA) dispute, the Court has before it cross-motions for summary judgment. Defendant ExxonMobil Disability Plan's ("EMDP") motion (Doc. No. 31) claims that it is a self-funded plan that delegates all administration to the Life Insurance Company of North America ("LINA") and as such a coverage decision by LINA can be set aside only if there was an abuse of discretion. EMDP contends that no such abuse occurred. The Plaintiff, Lillian Yip ("Yip"), has responded in opposition to this motion. (Doc. No. 35). Yip has filed her own Motion for Summary Judgment (Doc. No. 27) in which she claims the decision to deny her long-term disability benefits was "erroneous and against the great weight of the evidence." EMDP has responded in opposition to this motion. (Doc. No. 38). LINA, the plan's administrator, was initially sued, but was dismissed without prejudice pursuant to a stipulation filed by the Plaintiff. (Doc. Nos. 24, 25). Thus, if the Court grants either of the summary judgment motions, it will resolve all pending issues.

**I.     Factual Background**

The basic facts are not in dispute. Yip is a chemical engineer who went to work for ExxonMobil Corporation in July 2007. In her words, she worked as a "reservoir engineer supporting oil and gas operations in the US" and "career development of other engineers." (Doc.

No. 29-2 at 75). She described it as a "primarily office based job on the computer." (*Id.*). By June 2015, Yip had developed joint pain and was experiencing fatigue. Her rheumatologist, Dr. John Gomez, diagnosed her as having fibromyalgia. He recommended she cut her work week down to 30 hours and work from home when possible. By October 2015, Dr. Gomez had revised his opinion to a finding that she was unfit for work. Her last day of work was October 8, 2015.

Starting on October 8, 2015, Yip began receiving short-term disability benefits. These then transitioned to long-term disability benefits in June of the following year. She continued to experience problems due to fibromyalgia, joint pain, and/or fatigue.[1] The next year, Yip applied for Social Security disability benefits. These were denied on October 31, 2016 by the Social Security Administration because it found her condition was not severe enough to classify her as disabled. It concluded, "[a]lthough you said you have various limitations caused by your symptoms, the evidence does not show that your ability to perform basic work activities is as limited as you indicated. There are no major limitations placed on your ability to work." (Doc. No. 29-1 at 7). Yip sought a reconsideration, which reached the same result on March 15, 2017.

Ultimately, she requested a hearing, which was held in early 2018. On May 8, 2018, the Administrative Law Judge concluded that:

> Based on the testimony of the vocational expert, the undersigned concludes, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(*Id.* at 77).

During the same time period that Yip was seeking Social Security Disability benefits, she was reaching the end of her first two years of long-term disability on the EMDP. The standard

---

[1] Some records describe Yip's condition as "undifferentiated connective tissue disease, fibromyalgia, chronic fatigue." (*See, e.g.*, Doc. No. 29 at 137).

for determining long-term disability under the EMDP changes after the initial two-year period.

During the first two years, a person is considered disabled if the person is:

> [W]holly and continuously unable, by reason of a physical or mental health impairment, ***to perform any work*** suitable to the person's capabilities, training and experience, ***that the person's employer has available*** during the initial period, and such inability to perform work is expected to continue for [at least six months from the date the person's ability to perform work is determined].

(Doc. No. 29-6 at 356) (emphasis added).

After the first two years the standard gets stricter. Following the initial period, a person is "incapacitated" if the person is:

> [W]holly and continuously unable, by reason of a physical or mental health impairment, ***to perform any work for compensation or profit*** for which the person is or may become reasonably fitted by education, training or experience, and such inability to perform work is expected to continue for [at least six months from the date the person's ability to perform work is determined].

(*Id.*) (emphasis added).

Yip's situation was then reevaluated by LINA.[2] It is this reevaluation and subsequent denial of continued long-term disability benefits that is the lynchpin of this case. Yip's benefits would have expired on October 9, 2017—the end of her two-year period pursuant to the plan (since her last day of work was October 8, 2015). She was pregnant at the time (with a due date of November 9, 2017), and it was decided by the Administrator that she should remain covered until the end of 2017 and that her reevaluation would proceed in the new year.

After she gave birth, LINA began its reevaluation in June 2018. Yip participated in a Functional Capacity Evaluation and then a Transferrable Skills Analysis was performed. Based upon the results, LINA denied the continuation of the long-term disability benefits in September

---

[2] According to its Corporate Disclosure Statement, LINA is a wholly owned subsidiary of Connecticut General Corporation, which is a wholly owned subsidiary of Cigna Holdings, Inc. Cigna Holdings, Inc. is a wholly owned subsidiary of Cigna Holding Company, which is a wholly owned subsidiary of Cigna Corporation. (Doc. No. 20). Many, if not most, of the communications between Yip and LINA are actually on Cigna letterhead.

2018. Plaintiff appealed this denial in April 2019. The Plaintiff's records on appeal were reviewed by an independent psychiatrist and an independent rheumatologist, both of whom could not find any impairment that would prevent gainful employment. Based upon those reviews, LINA affirmed its earlier denial on May 7, 2019. Instead of pursuing a further internal appeal, Yip filed the instant suit.

## II.      Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The nonmovant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

## III.     Controlling Law Concerning ERISA Review and Summary Judgments

29 U.S.C. §1132(a)(1)(B) permits a person who was denied ERISA benefits under an employee benefit plan to appeal that decision to federal court. The Supreme Court has held that the denial of benefits should be reviewed by the district courts using a "*de novo* standard unless

the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Fifth Circuit, sitting *en banc* in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018), interpreted this dictate to require district courts to review both legal (plan interpretation) and factual (eligibility for benefits) using a *de novo* standard (overruling its prior panel decision in *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991)).

In closing, the majority described its prior precedent and why reviewing all facets *de novo* comported with those decisions:

> Our leading case in this area is *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir. 1999) (*en banc*), overruled on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). Under *Vega*, a plan administrator must identify evidence in the administrative record, giving claimants a chance to contest whether that record is complete. *Id.* at 299. Once the record is finalized, a district court must remain within its bounds in conducting a review of the administrator's findings, even in the face of disputed facts. *Id. Vega* permits departure from this rule only in very limited circumstances. One exception allows a district court to admit evidence to explain how the administrator has interpreted the plan's terms in previous instances. *Id.* (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 n.15 (5th Cir. 1992)). Another allows a district court to admit evidence, including expert opinions, to assist in the understanding of medical terminology related to a benefits claim. *Id.* Those situations are not actually expanding the evidence on which the merits are evaluated but providing context to help the court evaluate the administrative record.

> Although some of *Vega*'s reasoning for limiting the district court record to what was before the administrator depended on the abuse-of-discretion context, other interests it recognized support the same rule for *de novo* review. Among those is the interest in encouraging parties to resolve their dispute at the administrative stage. *Id.* at 300. A different standard of review also does not undermine *Vega*'s observation that there is not a "particularly high bar to a party's seeking to introduce evidence into the administrative record." *Id.* And generally limiting the evidence to what was in front of the plan administrator when a dispute ends up in court allows for speedier resolution. *Id.*

In short, overruling *Pierre* while adhering to *Vega* in the context of *de novo* review serves the twin ERISA goals of allowing for efficient yet meaningful judicial review. *See* 29 U.S.C. § 1001(b) (stating that ERISA is intended to provide "ready access to the Federal courts"); *Firestone*, 489 U.S. at 113–14, 109 S.Ct. 948 (explaining that a deferential default standard "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted"). *Vega* will continue to provide the guiding principles on the scope of the record for future cases that apply *de novo* review to fact-based benefit denials.

*Ariana M.*, 884 F.3d at 256–57.

The only real exception to this application is that set out in *Firestone*: if the plan specifically gives the administrator discretional authority.[3]

The plan in question, as quoted above, specifically delegates that discretional authority to the administrator (LINA) and thus falls under the *Firestone* exception.

"When a plan grants the administrator discretion to determine claims for benefits, claimants may recover under ERISA *only* if the administrator's rejection of their claim was an abuse of discretion." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir. 2006) (emphasis added); *see also Patterson v. Prudential Inc. Co. of Am.*, 693 F. Supp. 2d 642, 651 (S.D. Tex. 2010); *Ellis v. Liberty Life Assur. Co.*, 394 F.3d 262, 269 (5th Cir. 2004). That is the situation that exists in the present case. As such, Plaintiff's claim for denial of benefits should be reviewed for an abuse of discretion, and Plaintiff is entitled to recover under ERISA only if LINA abused its discretion when it denied her claim. Plaintiff has, in fact, agreed with Defendant that the abuse of discretion standard is the appropriate one to apply here. (Doc. No. 35 at 2).

An abuse of discretion occurs when "the plan administrator acted arbitrarily or capriciously." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016). A decision

---

[3] Several states, including Texas, have passed statutes prohibiting such clauses. Tex. Ins. Code § 1701.062(a). Some have argued that state statutes that prohibit discretionary clauses are ineffective because they are pre-empted. The Fifth Circuit in *Ariana M.* elected to forego addressing the issue because the point was not raised. Similarly, this Court need not address this point as it has not been raised by the non-movant in any point of error or argument.

is considered arbitrary only if it is "'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *See Baptist Mem. Hosp.— Desoto, Inc. v. Crain Automotive, Inc.*, 392 F. Appx. 289, 296 (5th Cir. 2010) (per curiam) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828–29 (5th Cir. 1996)). If LINA's decision to deny Plaintiff's benefits is "based on evidence, even if disputable, that clearly supports the basis for its denial," then no abuse of discretion has occurred. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). When a court reviews an administrator's determinations, the court is limited to the evidence in the administrative record at the time the determination was made. *See Gooden v. Provident Life & Accident Ins.*, 250 F.3d 329, 333 (5th Cir. 2001) Further, this Court's review of LINA's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Holland*, 576 F.3d at 247.

The procedural aspects of resolving this case are well established.

"Standard summary judgment rules control in ERISA cases." *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (internal quotation marks omitted). We review a "district court's grant of summary judgment de novo, applying the same standards as the district court." *Id.* Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (internal quotation marks omitted).

*Green v. Life Ins. Co. of North America*, 754 F.3d 324, 329 (5th Cir. 2014).

The manner in which the actual plan is interpreted is also well-established.

"Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation" of policy provisions at the heart of this dispute. *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641

(5th Cir. 2004). "When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists." *Id.* We "interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (internal quotation marks omitted). "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." *Id.*

*Id.* at 331.

## IV.  Analysis of the Motions

These competing motions for summary judgment and the respective responses set out in detail the factual positions supporting the Plaintiff's argument that LINA (and therefore EMDP) was wrong in its determination to discontinue long-term disability benefits to Yip, and they set out in detail the factual support for the Defendant's argument that LINA (and therefore EMDP) was right in its denial. In most contexts, this factual dispute would make a judge's job easy.

A factual dispute on critical elements usually requires a judge to deny the motions and to place the case on the trial docket. ERISA cases, however, are rarely resolved in this fashion. The controlling question is not whether a factual dispute exists—as it clearly does. The question is whether LINA abused its discretion in the manner it resolved this dispute. Yip obviously thinks it did; while EMDP contends otherwise.

### A.  Guiding Principles

The first step in resolving this dispute is establishing which side has the burden of proof. This is the easier of the two questions the Court must answer. Initially, however, the Court finds it appropriate to set out some guiding principles. First, it finds that EMDP is a self-funded plan that has validly delegated and designated eligibility determinations to LINA.

8

The plan clearly states in § 2.1(B)(1):

Discretionary Authority to Interpret Plan
The Administrator-Benefits (and those to whom the Administrator-Benefits has delegated authority) shall be **vested with full and final *discretionary authority* to determine eligibility for benefits, to construe and interpret the terms** of the core benefit plans in their application to any participant or beneficiary, and to decide any and all appeals relating to claims by participants or beneficiaries.

(Doc. No. 29-6 at 281) (emphasis added).

The plan, via §§ 5.13(B) and 5.16, then delegates to Connecticut General Life Insurance Company, the parent company of LINA, the authority to administer its long-term disability claims. (Doc. No. 29-6 at 356–58; *see also* Doc. No. 20).

As noted above, that delegation means the administrator's decision can be set aside only for an abuse of discretion—or, stated another way, it can be set aside only when that decision is arbitrary or capricious. This has been interpreted as being a decision that is without a "rational connection" with the known facts. *Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019). The Court may not substitute its own judgment for that of the administrator. *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir. 2015). The existence of competing facts or conclusions does not make an administrator's decision arbitrary. *Id.* at 308.

Finally, in answer to the question posed above, the ERISA claimant has the burden to prove that the administrator's decision constituted an abuse of discretion. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir. 2019).

**B.      Did LINA Abuse Its Discretion When It Denied Long-Term Benefits to Yip?**

Yip argues she has presented "substantial evidence that she is unable to perform any occupation and is disabled under the terms of the plan." (Doc. No. 27 at 7). To support this contention, Yip, both in her Motion for Summary Judgment (Doc. No. 27) and in her response to Defendant's Motion for Summary Judgment (Doc. No. 35), highlights in detail various aspects of

9

the record before the Court. These include the following aspects of her medical picture. She has a history of pain and fatigue as early as 2008. These symptoms increased in severity in the years between 2012 and 2015—so much so that her doctors recommended periodic medical leaves and a curtailed work schedule. Thus, restrictions increased over time until, in approximately October 2015, her employer, ExxonMobil, could no longer accommodate her restrictions. She then went on disability leave.

While her various ailments required care from several medical specialists, including a rheumatologist, gynecologist, and a colorectal surgeon, her primary problems appear to have been (and remain today) fibromyalgia and/or undifferentiated connective tissue disease.[4] That being the case, Yip emphasizes in her pleadings the observations and treatment she received from her rheumatologist, Dr. Gomez, throughout the 2016–2018 time period. On some visits, her symptoms were worse than others, but at no time did they fully resolve. Throughout his treatment of Plaintiff, Dr. Gomez approved of her performing light duty work (usually from home), but he generally conditioned such approval as depending on whether or not she was experiencing a flare-up.

Plaintiff also points to the opinions of Andrea Higgins, a mental health counselor who concludes that Yip's "medical conditions in combination with the associated anxiety and depression make it difficult for her to fulfill normal daily tasks and impair her ability to work in a normal office setting or to keep a normal work pace" and that she "struggles to cope with the stress/anxiety of daily functioning and would therefore struggle with additional stress in the

---

[4] The latter condition in layman's terms is one in which the immune system malfunctions and attacks the healthy tissue. Generally, but not always, it runs a mild course and has a low likelihood of progression to a more serious state. Fibromyalgia is a chronic disorder characterized by widespread muscular skeletal pain, fatigue, and tenderness. Its root cause is often undeterminable, but it can be triggered by physical trauma, infection, or stress. It is not necessarily life-threatening, but it can certainly affect day-to-day activities and can lead to anxiety and/or depression in addition to the pain it causes.

workplace." Katherine Badgett, one of her physical therapists, concluded that Yip is only capable of sitting or standing for 20 minutes at a time but not more than 2 hours total in a day and would be off task during a typical workday 25% or more of the time. Finally, Ms. Badgett noted that "[b]ecause Ms. Yip needs a lot of therapy to help moderate her pain in addition to days when she simply can't do things and frequent doctor's appointment visits so she could easily miss a week or more of every month of work (sic)." (Doc. No. 29-1 at 156).

Karen Kowenski, another one of Yip's physical therapists, agreed with Badgett's finding that Yip could only sit for 10-45 minutes and only stand from 30-60 minutes, but never more than 2 hours in an 8-hour workday. She projected that Yip would miss 50% of workdays per month. (Doc. No. 29-2 at 56).

Overall, Plaintiff contends the evidence demonstrates proof of multiple medical issues supporting a consistent diagnosis that would complicate, if not prohibit, her return to gainful employment. EMDP does not contend that this evidence does not exist or even that it should be ignored. It does, however, emphasize that there is contrary evidence that LINA considered and that this Court should also consider.

First, it points to two "outside" factors that support LINA's decision.[5] Yip applied for and was denied social security disability in 2016. The decision found that she has certain limitations but that she has "no major limitations placed on her ability to work." (Doc. No. 29-1 at 3–6). This decision was upheld on reconsideration in May 2017. It was then appealed to an Administrative Law Judge who also found Yip was not entitled to disability benefits:

> Based on the testimony of the vocational expert, the undersigned concludes, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to

---

[5] The Court uses the term "outside" advisedly. Here, it is used to denote that the facts represented determinations or events that were necessarily not part of the LINA determination process. They are, however, documented in the administrative record—so they are not "outside" the record before this Court.

other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from October 12, 2015, through the date of this decision (20 CFR 404.1520(g)).**

<u>DECISION</u>

Based on the application for a period of disability and disability insurance benefits filed on September 19, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Doc. No. 29-4 at 13).

The second "outside fact" that Defendant emphasizes is that during Yip's disability leave, Yip not only married, but also gave birth to a child. The social security opinion even noted that she enjoyed "not working." (*Id.* at 11). That same opinion matched the conclusion of other therapists who noted that her complaints were inconsistent and did not match the actual evidence of impairment. (*Id.* at 10). For example, one of the therapists noted:

> The claimant was inconsistent in lifting/carrying capabilities. The claimant states she is able to carry her 7 month old child at home that weighs 13 pounds but was unable to lift/carry anything over 5 pounds.

(Doc. No. 29-1 at 111).

While these two observations suggest inconsistencies in Yip's reporting and perhaps undermine her claim, they are not the heart of EMDP's argument. Its argument is more straightforward. There is valid medical evidence that supports the decision not to award long-term disability benefits. Therefore, that decision was not the product of an abuse of discretion by LINA.

LINA informed Yip some six months after she gave birth that it was going to review her disability status. Yip underwent a Functional Capacity Evaluation with a physical therapist. The

results of that evaluation demonstrated Yip had the capacity to complete "Frequent sitting, Frequent standing, Frequent walking,…Frequent reaching at desk level, Frequent reach[ing] floor level,…Constant object handling, Constant fingering, Constant simple hand grasp, Constant firm hand grasp, Constant fine/gross hand manipulation." (Doc. No. 29-4 at 30).

It was also noted that Yip "terminated the positional tolerance portion of her test after 20 minutes, due to reports of increased pain, but did not demonstrate appropriate physiological changes that would concur with subjective complaints." (*Id.*). Additionally, it was noted that Yip described her typical day as taking care of her 7-month-old (feeding, changing diapers, lifting her daughter) and going to physical therapy twice a day. (*Id.* at 33).

Yip also underwent two different Transferable Skills Analyses. On July 5, 2018, Vocational/Rehabilitation Specialist Mary Faltaous performed a Transferable Skills Analysis, which included a review of disability questionnaires, job description, dictionary of occupational titles, OASYS, and the FCE completed by Castro. (*Id.* at 47–48). At that time, Faltaous did not find a job based on the available wages Faltaous was trying to find. (*Id.*). The following month, Faltaous performed another Transferable Skills Analysis. (*Id.* at 49–50). At that time, following a new wage data release, Faltaous determined that based on Yip's skills, education attainment, and work history, Yip could perform the job of a Chemical Design Engineer. (*Id.* at 50). Given these results, LINA determined that Yip did not qualify for the continuation of long-term disability benefits.

Yip then appealed that decision. In evaluating the appeal, LINA brought in a new evaluation team that would not be tainted by its prior decision. It also requested that her medical records be reviewed by two different board-certified physicians: a psychiatrist and a rheumatologist. Dr. Peter Volpe, the psychiatrist, reviewed the medical records and spoke to

some of Yip's caregivers. He ultimately agreed with Dr. Gomez, Yip's treating physician, that Yip had no function limitations or activity restrictions based upon her mental health.

Dr. Paramvir Sidhu, a rheumatologist, reviewed Yip's medical records and her affidavit. Dr. Sidhu found that Yip had no physical co-limiting conditions. (Doc. No. 29-5 at 110). In reaching his conclusion, Dr. Sidhu observed that Dr. Gomez's treatment notes did not indicate "any joint deformities, limitations on range of motion of joints, or active synovitis of joints." (*Id.*). Additionally, the results of bloodwork testing ordered by Dr. Gomez did not objectively support Plaintiff's fibromyalgia diagnosis, with Dr. Sidhu noting: "Review of lab results show that specific autoantibodies including anti-CCP antibody, SS-A antibody, SS-B antibody, DsDNA antibody, RNP antibody, Smith antibody are negative. Complements C3 & C4 (which are decreased in autoimmune connective tissue diseases) are normal." (*Id.*). Dr. Sidhu also opined, "[a] mere diagnosis of fibromyalgia does not preclude gainful employment. Dr. Gomez has not described how fibromyalgia precludes [Plaintiff] from working." (*Id.*). Dr. Sidhu concluded that the record viewed "in its totality does not demonstrate physical impairment that precludes [Plaintiff] from working in her own occupation or that indicate working in her own occupation is medically contraindicated." (*Id.*). Based upon these findings, LINA affirmed its prior denial.

A court must give deference to the decision of the plan administrator and may not substitute its judgment for that of the administrator. *Killen*, 776 F.3d at 307. Here, there is clearly evidence from which a reasonable finder of fact could decide either way. Indeed, if this Court were writing on a blank slate, it would probably not reach the same decision as the one that LINA reached here. Unfortunately for Yip, that is not the standard by which courts review these matters. The evidence in support of the Administrator's decision need only fall "somewhere on

the continuum of reasonableness—even if on the low end." *Porter v. Lowe's Companies, Inc.'s*

*Bus. Travel Acc. Ins. Plan*, 731 F.3d 360, 362–64 (5th Cir. 2013).

> Stated differently:

> **[T]he job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans**...Here, the administrator, and the medical experts upon which it relied, understood and accepted the diagnosis of fibromyalgia; and they considered the subjective evidence Corry offered. It is true that the administrator did not accept the opinion of Corry's experts as to the disabling effects of her symptoms. However, given the three qualified medical experts who found no objective medical evidence of disability, the administrator, under the established standard of review that restricts the courts, was not obliged to accept the opinion of Corry's physicians. **In this "battle of the experts" the administrator is vested with discretion to choose one side over the other**...In sum, the claim that the administrator was arbitrary and capricious in failing to consider and give proper weight to relevant evidence must be rejected.

*Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 401 (5th Cir. 2007) (emphasis added) (internal citations to *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 249–50 (5th Cir. 2007)).

The Court has detailed much of the evidence above. Yip implies that the evidence against her position should be disregarded because the only evidence supporting LINA's decision emanates from those reviewers hired by it; however, such a conclusion is not accurate. As already noted, the experts at the SSA found she was not permanently disabled (albeit using a different standard). Even her own treating physician suggested she could work from home.

In May 2017, Plaintiff's own treating rheumatologist's assessment indicated Plaintiff was improving and recommended that Plaintiff work "part time at home with flexibility depending on flares" (*see* Doc. No. 29-1 at 43), which is a change from his Individual Disability Report dated October 5, 2015 that deemed Plaintiff "unfit for work" with or without limitations. (Doc. No. 29 at 147).

On August 16, 2018 and October 25, 2018, Dr. Garza, Yip's own treating rheumatologist, documented Plaintiff's improvement in his progress notes. On August 16, 2018, under "History of Present Illness," he indicated Plaintiff was "having some headaches and associated rash, both symptoms however seemed to have improved over the last few weeks." (Doc. No. 29-5 at 10). On August 16, 2018 and October 25, 2018, under the "Psychiatric" section, he indicated "no Depression. No Anxiety." (*Id.* at 11; Doc. No. 29-2 at 30). Under "Rheumatology" and "Examination General," he indicated Plaintiff had a normal range of motion and her general appearance was "well nourished, well developed, no acute distress." (Doc. No. 29-5 at 12; Doc. No. 29-2 at 30–31). Taken as a whole, the records certainly document Yip's medical problems, but they do not necessarily support the conclusion that she cannot perform any "work for compensation or profit" or that LINA's decision was arbitrary and capricious.

## V.     Conclusion

The Court finds that LINA did not abuse its discretion in reaching the decision that Yip did not qualify for long-term disability benefits. While this Court might not have reached the same decision, it cannot say that there was not substantial evidence to support that decision. It therefore grants EMDP's Motion for Summary Judgment (Doc. No. 31) and denies Yip's Motion for Summary Judgment (Doc. No. 27).

SIGNED at Houston, Texas this 1st day of November, 2021.

Andrew S. Hanen
United States District Judge